UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMOR DEMBY,                          :
                                     :    Civil Action No. 08-5966 (NLH)
          Petitioner,        :
                                     :
          v.                 :    **OPINION**
                                     :
KAREN BALICKI, et al.,               :
                                     :
          Respondents.      :

**APPEARANCES:**

       JAMOR DEMBY, Petitioner pro se
       #552013
       South Wood State Prison
       215 Burlington Road South
       Bridgeton, New Jersey 08302

       ROBIN A. HAMETT, ASSISTANT PROSECUTOR
       CAMDEN COUNTY PROSECUTOR'S OFFICE
       Monmouth County Courthouse
       25 North Fifth Street
       Camden, New Jersey 08102
       Counsel for Respondents

**HILLMAN**, District Judge

       This matter is before the court pursuant to a petition for a

writ of habeas corpus under 28 U.S.C. § 2254, filed by petitioner

Jamor Demby, challenging his 2006 New Jersey state court

conviction.  For the reasons stated below, this Court will deny

the habeas petition for lack of merit.

I.   <u>PROCEDURAL BACKGROUND</u>

Petitioner, Jamor Demby ("Demby"), was indicted by a Camden County grand jury on December 13, 2004, on two counts of first degree armed robbery (Counts 1 and 4), two counts of second degree possession of a weapon for an unlawful purpose (Counts 2 and 5), two counts of third degree unlawful possession of a weapon (Counts 3 and 6), one count of fourth degree aggravated assault (Count 7), and two counts of second degree certain persons not to have weapons offense (Counts 8 and 9).  (Ra1 - Indictment No. 4702-12-04).[1]

Before trial, several motions were heard before the Honorable Samuel D. Natal, J.S.C., including a pro se motion to dismiss the grand jury indictment, which was denied (Rta1,[2] June 6, 2005 motion transcript); a pro se motion to act as co-counsel (Rta2, September 19, 2005 motion transcript); and a motion to proceed pro se, which was denied (Rta3, November 9, 2005 motion transcript).  Demby's jury trial then commenced on March 28, 2006, with respect to Counts 1 through 7 of the indictment. Counts 8 and 9, the certain persons not to have a weapons offenses, required a bifurcated proceeding to follow in the event of a guilty verdict on Counts 1-7.

---

[1]   "Ra" refers to the Respondents' Appendix.

[2]   "Rta" refers to Respondents' transcript appendix.

At the close of the State's case at trial, the prosecutor moved to dismiss Count 7 (fourth degree aggravated assault), counsel brought several motions, which was granted. (Rta5/5T37:13-23).  Demby's counsel then moved for a judgment of acquittal, which the trial court denied.  (Rta5/5T38:6-44:5).

On March 30, 2006, the jury returned a verdict of guilty, finding Demby guilty of theft as a lesser included offense on Count 1, as well as the charges set forth in Counts 4, 5 and 6. The jury acquitted Demby on Counts 2 and 3.  (Rta6/6T5:18-9:19; Ra3 - March 30, 2006 verdict sheet).  The jury was dismissed for a brief recess.  At that time, the prosecutor moved to dismiss Count 8 in light of the jury verdict.  The motion was granted. (Rta6/6T10:3-11).

The proceedings resumed with a trial on Count 9 of the indictment (the certain persons charge) on March 30, 2006.  On that same date, the jury returned a guilty verdict on Count 9. (Rta6/6T40:22-41:21).

Petitioner's sentencing hearing was held on May 5, 2006.  At that time, Demby moved for a new trial and the State moved to impose an extended term sentence.  Both motions were denied. (Rta7/7T6:3-32:8).  The court then sentenced Demby as follows: Eighteen (18) years imprisonment with an 85% parole disqualifier under the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, and nine years of parole ineligibility under the Graves Act, N.J.S.A.

2C:43-6(c), on Count 4, to be followed by a consecutive prison
term of eight years on Count 9, subject to a five-year parole
disqualifier.  Count 5 was merged into Count 4.  On Count 1, six
months imprisonment to run concurrent to Count 4, and on Count 6,
a term of five years also to run concurrent to Count 4.
(Rta7/7T32:12-20 and 41:11-48:19; Ra4 - May 5, 2006 Judgment of
Conviction).

    Demby filed a direct appeal from his conviction and sentence
to the Superior Court of New Jersey Appellate Division.  The
Appellate Division affirmed the conviction and sentence on April
4, 2008.  State v. Demby, No. A-6039-05T4 (App. Div. April 4,
2008).  (Ra11).  The New Jersey Supreme Court denied
certification on June 12, 2008.  (Ra14).

    On July 29, 2008, Demby filed a pro se application for post-
conviction relief ("PCR") before the sentencing court.  (Ra29).
By order dated January 5, 2009, the trial court dismissed the PCR
petition without prejudice as Demby had advised the court of his
desire to withdraw the petition.  (Ra19).

    Demby filed this federal habeas petition under 28 U.S.C. §
2254 on or about December 4, 2008.  The State filed an answer
with the relevant record on August 10, 2010, (Docket entry no
11), together with a motion to seal documents.  (Docket entry
12).  An amended document to the motion to seal also was filed on
August 10, 2010.  (Docket entry no. 13).  This Court granted the

4

State's motion in an Opinion and Order entered on March 22, 2011. (Docket entry nos. 16 and 17).  Demby did not file a traverse or reply.

## II.  FACTUAL BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the factual recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division, decided on April 4, 2008, with respect to petitioner's direct appeal from his judgment of conviction and sentence:

> The charges result from two separate incidents, the first of which occurred on July 15, 2004.  On that date, defendant entered an RXD pharmacy in Camden and demanded cigarettes. The sales clerk, Adaliz Santos, responded by saying, "[G]ive me the money first."  Defendant lifted his shirt and displayed a brown handle to an object which Santos believed to be a gun, and proceeded to help himself to cigarettes from behind the sales counter.
>
> Two days later, on July 17, 2004, defendant returned to the store and went behind the sales counter.  Santos and the pharmacist, Chetal Prajapati, were in the back of the store working.  Prajapati noticed defendant and said "excuse me." Defendant replied by lifting his shirt, and exposing a gun tucked into his pants.  He pulled it out, put his finger on the trigger, and asked "what?"  Having effectively silenced Prajapati and Santos, he put the gun back into his waistband and continued to help himself to cigarettes.
>
> Prajapati, who had some experience with handguns, testified at trial that the gun displayed during the July 17, 2004 incident was a nine millimeter weapon, black, with maybe some brown, and approximately six inches long.  She also testified that defendant had actually stolen cigarettes from the store on a prior occasion, on July 13, 2004, while in

5

the company of an unidentified man.  No charges were filed
as a result of that event.

All the incidents occurred in the morning in broad daylight.
Santos, as well as Monica Calderone, a store employee who
witnessed the July 15 incident, identified defendant's photo
from an array they were shown by police.  No gun was ever
recovered.  At trial, Santos identified defendant as the
perpetrator, as did Calderone.

(Ra11, April 4, 2008 Appellate Division Opinion, at pp. 2-4).

### III.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429
U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.  See Royce
v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.
Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399
U.S. 912 (1970).  Thus, because Demby is proceeding as a pro se
litigant in this matter, the Court will accord his habeas
petition the liberal construction intended for pro se
petitioners.

Section 2254(a) of Title 28 of the United States Code gives
the court jurisdiction to entertain a habeas petition challenging
a state conviction or sentence only where the inmate's custody
violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir.

7

1997)(citations and internal quotation marks omitted); <u>see also</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. <u>See</u> 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. <u>See</u> 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with <u>res judicata</u> effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), <u>reversed on other grounds sub nom</u>. <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005); <u>see also</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion

8

whatsoever.  <u>See</u> <u>Rompilla</u>, 355 F.3d at 247.  <u>See also</u> <u>Chadwick v.</u>
<u>Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538
U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237
(2000)(even a summary adjudication by the state court on the
merits of a claim is entitled to § 2254(d) deference)).  On the
other hand, "[i]f the petitioner's legal claims were presented
but not addressed by the state courts, 28 U.S.C. § 2254(d) does
not apply."  <u>Rolan</u>, 445 F.3d at 678.  <u>See also</u> <u>Hameen v. State of</u>
<u>Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment), <u>cert</u>.
<u>denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL
1523144, *6 n.4 (D.N.J. 2000).

     If the New Jersey courts adjudicated the petitioner's claims
on the merits, this Court may not grant relief unless either §
2254(d)(1) or § 2254(d)(2) is satisfied.  <u>See</u> 28 U.S.C. §
2254(d).  Accordingly, this Court may not grant habeas relief to
the petitioner unless the adjudication of a federal claim by the
New Jersey courts involved an unreasonable application of clearly
established Supreme Court law, <u>see</u> 28 U.S.C. § 2254(d)(1), or was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding and Adamson
is in custody in violation of the Constitution or laws or
treaties of the United States.  <u>See</u> 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U .S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not

unreasonable.[3]  See id. at 409-10.  "The unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly."  Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  ANALYSIS

Demby raises a single claim in his habeas petition.  Namely, Demby asserts that the trial court denied Demby his constitutional right to self-representation in violation of the

---

[3]  See also Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

Sixth and Fourteenth Amendments.  (Petition, ¶12A).  This claim was raised and exhausted on direct appeal in state court.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defense."  U.S. Const. amend. VI.  In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court recognized that the Sixth Amendment also guarantees the right of self-representation, as "the Constitution does not force a lawyer upon a defendant."  422 U.S. at 814.  The rights embodied in the Sixth Amendment "grant[] ... [an] accused personally the right to make his defense."  Id. at 819.  The Court reasoned that although the Sixth Amendment was intended as a protection for the defendant, "thrust[ing] counsel upon the accused against his considered wish, ... violates the logic of the Amendment."  Id. at 820.

Consequently, the Sixth Amendment embodies two competing rights because exercising the right to self-representation means waiving the right to counsel.  See Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000).

> It is axiomatic that a criminal defendant's waiver of a constitutional right must be voluntary, knowing and intelligent.  Therefore, the constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel.

Buhl, 233 F.3d at 798.  Further, courts should not presume acquiescence in the loss of such a fundamental right; rather,

they should indulge every reasonable presumption against a waiver of the right to counsel. <u>United States v. Stubbs</u>, 281 F.3d 109, 117 (3d Cir.)(citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 1028 (2002). Moreover, because the right to counsel is fundamental to due process, its denial can never be harmless error. <u>Id</u>. <u>See also</u> <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 177 n.8 (1984). Thus, while the Sixth Amendment guarantees both the right to counsel and the right to self representation, "it is clear that it is representation by counsel that is the standard, not the exception." <u>Martinez v. Court of Appeal of California</u>, 528 U.S. 152, 161 (2000).

The Supreme Court has emphasized that, to assert the right of self-representation, a defendant "must voluntarily and intelligently elect to conduct his own defense, and most courts require him to do so in a timely manner." <u>Martinez</u>, 528 U.S. at 161-62 (internal quotation marks and citations omitted). After a defendant asserts his desire to represent himself, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." <u>Faretta</u>, 422 U.S. at 835 (internal quotation marks omitted).

Moreover, while the Sixth Amendment gives a criminal defendant the right to represent himself at trial, it does so only to the extent that he is "able and willing to abide by rules of procedure and courtroom protocol," <u>McKaskle</u>, 465 U.S. at 173

13

(1984); see also Martinez, 528 U.S. at 162 (holding that right to self-representation must, at times, yield to "the government's interest in ensuring the integrity and efficiency of the trial...."); United States v. Schwartz, 315 Fed. Appx. 412, 416 (3d Cir. 2009), cert. denied, 130 S.Ct. 2371 (Apr. 26, 2010).

Recently, the United States Court of Appeals for the Third Circuit discussed the issue of self-representation in Alongi v. Ricci, 367 Fed. Appx. 341 (3d Cir. Feb. 26, 2010).  The Third Circuit held that the trial court had failed to conduct an appropriate Faretta colloquy, thus resulting in the denial of petitioner's Sixth Amendment right to represent himself.  The Third Circuit found that the defendant had unequivocally expressed his desire to represent himself, but the trial court misstated the applicable standard.  Thus, while a court must consider a defendant's "background, experience, and conduct" in their colloquies, Johnson v. Zerbst, 304 U.S. 458, 464 (1938), such "inquiry must be directed towards determining whether the defendant's waiver is knowing and voluntary, not towards whether the defendant has 'justified' his request, or is capable of representing her/himself."  Alongi, 367 Fed. Appx. at 348.

In Alongi, the trial court focused solely on whether the defendant would be a skillful advocate, which is directly contrary to Faretta's explanation that a defendant's "technical knowledge" is simply not relevant to "an assessment of his knowing exercise of the right to defend himself."  See Alongi,

14

supra (quoting Faretta, 422 U.S. at 836).  Thus, the Third
Circuit continued, "a defendant's request to waive the right to
counsel and proceed pro se cannot be denied because the court
believes that the defendant's choice is ill-advised.  Such a
choice is almost always ill-advised.  Nevertheless, as the Court
explained in Faretta: 'although [a defendant] may conduct his
own defense ultimately to his own detriment, his choice must be
honored out of that respect for the individual which is the
lifeblood of the law.'" Alonqi, supra (quoting Faretta, 422 U.S.
at 834 (internal citations and quotation marks omitted)).

Here, in reviewing petitioner's claim on direct appeal, the
state appellate court examined Demby's claim that he was denied
his right to self-representation under the standards set forth in
State v. Reddish, 181 N.J. 553 (2004), State v. Crisafi, 128 N.J.
499 (1992) and Faretta.  In particular, the court applied the
standards in Crisafi and Reddish in determining whether the trial
court erred in deciding that defendant's request to represent
himself was not knowing and intelligent:

> Our courts honor not only the right to counsel as embodied
> in the Sixth Amendment, but the right of self-
> representation.  State v. Reddish, 181 N.J. 553, 583 (2004).
> The right of self-representation "is about respecting a
> defendant's capacity to make choices for himself, whether to
> his benefit or to his detriment."  Id. at 585-86.  It is
> personal, and grounded in the concept that only the
> defendant "'bear[s] the personal consequences of a
> conviction.'" Id. at 586 (quoting Faretta[, 422 U.S. at
> 834][]).
>
> The right may only be exercised, however, where a knowing,
> intelligent and voluntary waiver has been established after

15

a searching inquiry by the court. Id. at 592-95; State v. Crisafi, 128 N.J. 499, 508-12 (1992). The inquiry conducted pursuant to Crisafi must include an explanation of the charges, of the statutory defenses, and an explanation of the range of sentences. Reddish, supra, 181 N.J. at 593 (quoting Crisafi, supra, 128 N.J. at 510-12). In addition, a defendant is to be advised of the possible difficulties he or she will encounter and the lack of wisdom of proceeding without counsel. Id. at 593; Crisafi, supra, 128 N.J. at 510. A defendant must also be told that exercise of the right of self-representation means forfeiture of any future claims of ineffective assistance of counsel. Reddish, supra, 181 N.J. at 594. Credibility findings based on "specific facts, observations, and conclusions" are to be made as a result of this "open-ended" questioning. Id. at 595. After conducting the requisite Crisafi hearing, the trial judge denied defendant the right to proceed pro se. We concur with his conclusions.

(Ra11, April 4, 2008 Appellate Division Opinion at pp. 5-6).

The appellate court noted that the inquiry conducted by the trial judge was mostly leading questions, not "open-ended" questions as contemplated by Crisafi. However, when the trial judge did ask open-ended questions, Demby had difficulty responding and was unable to demonstrate a full understanding, in his own words, of the challenges he would be facing in representing himself. (Ra11 at pg. 6). The trial judge also clearly explained the elements of the charges and the potential sentencing consequences to Demby. The appellate court found:

Defendant answered several questions inappropriately, however, by simply asserting that he was competent and prepared to represent himself. It was often only after repeated prodding from the trial judge that defendant would even attempt to answer specific questions. When the trial judge asked about difficulties defendant might encounter during the cross-examination of witnesses, defendant answered "I don't think I will have any difficulty at all.

16

It was the trial judge's duty to determine whether
defendant's "understanding" of the law was "real or
feigned." [Reddish, 181 N.J.] at 594.  In the final
analysis, the record reveals that although defendant
superficially understood much about the legal process and
was able to give some superficially correct answers, he was
not capable of making an intelligent, knowing, and voluntary
waiver of his right to counsel.  The record supports the
trial judge's conclusion that defendant did not understand
the law sufficiently to proceed pro se.

As the court said in State v. DuBois, 189 N.J. 454, 475
(2007), deference should be given to the trial court's
evaluation of the defendant's "understanding of what it
meant to represent himself and whether defendant's decision
to proceed pro se was knowing and intelligent."  The trial
judge's conclusion was founded on ample evidence on the
record that defendant did not actually understand the legal
process sufficiently to make this waiver.

(Ra11 at pp. 6-7).

In support of its conclusion, the Appellate Division pointed
to Demby's futile motions that he had filed pro se while he was
still being represented by counsel.  For instance, on June 6,
2005, Demby filed a motion to dismiss the indictment as "based on
mere rumor" and as "unverified due to the fact that the victims
were not presented before the [g]rand [j]ury."  The trial judge
denied the motion, explaining to Demby that the issuance of an
indictment on hearsay is not improper.  Nevertheless, Demby
rejected the court's explanation and plainly showed that he did
not understand the law in this regard:

my argument is not hearsay. ... My argument is based on that
there was no supporting evidence to support the allegations
presented before the [g]rand [j]ury.

....

17

> I'm talking about the investigating officer.  He could not
> provide any ... supporting evidence, because he wasn't a
> witness to the actuality . ...

(Ra11 at pg. 8).

Demby also asserted additional grounds for dismissal of the indictment that were rejected by the trial judge as clearly incorrect, further demonstrating Demby's lack of understanding of the law.  For instance, Demby argued that the investigator obtained petitioner's name from another store, which "tainted" the case because it was not presented to the grand jury.  Demby also argued that the indictment should be dismissed because the photo array shown to Santos was never shown to the grand jury.  (Ra11 at pg. 9).

Next, on September 19, 2005, the trial judge addressed another motion filed by Demby, wherein Demby asked to proceed as "co-counsel" in his case.  Demby again told the trial court that he intended to make another motion for dismissal of the indictment based on misconduct of the grand jury.  The appellate court found this motion by Demby troubling:

> From our reading of the record, it seems both the trial
> judge and defendant forgot the June 6 proceeding at which
> the indictment dismissal issue was decided against defendant
> for the first time.  When asked why the motion was being
> filed so near the trial date, defendant explained it was not
> his "fault" as his lawyer did not get him the grand jury
> transcript until June.  Clearly, he had the transcripts
> prior, at least, to June 6, as that is when he filed his
> first motion to dismiss the indictment.  Given the volume of
> matters trial judges contend with, the trial judge's lack of
> recollection is understandable.  Defendant's confusion is
> not.

18

(Ra11 at pp.9-10).

The appellate court continued to discuss Demby's lack of understanding of the basic law, commenting on Demby's third attempt to dismiss the indictment on hearsay grounds.  On November 9, 2005, Demby raised the issue of the "legality" of the indictment for the third time:

> On this occasion the trial judge did recall previously addressing a similar motion, and so advised defendant. Defendant responded: "I'm allowed to due process, I'm entitled to that.  So if you're going to -- if I submit a motion, even though you made a ruling, I submitted it for reconsideration then."
>
> When reminded again that the motion had been previously denied, and asked to explain the reason for the new application, defendant said, "what's different about it is that the witnesses were local citizens -- my argument at the last court appearance - - at the last indictment hearing was that the witnesses are local people and that there was no reason that the prosecution shouldn't have brought them to the grand jury."  In other words, defendant was still insisting that the indictment should be dismissed on hearsay grounds.
> Curiously, it appears from the November 9 transcript that defendant, acting pro se, had actually taken an appeal from either the June or September denial of his motion to dismiss the indictment on hearsay grounds and that the appeal was denied.  It seems defendant forgot not only about the prior dismissal motions, all of which were made on hearsay grounds, he also forgot about the appeal he himself pursued -- which was denied.
>
> Towards the close of the November 9 proceeding defendant reiterated that he wanted the judge to rule on his application to dismiss the indictment, this time insisting that on September 22 he had filed a notice to dismiss on the grounds of grand jury misconduct.  He again protested that only the investigating officer testified.  Defendant said the investigating officer "only served the purpose of consigning to the prosecutor's file before this grand jury, which returned the indictment with no witnesses with firsthand knowledge to verify the allegations alleged in the report."  Defendant's statements about the indictment alone

raise a question about his ability to actually comprehend
what he was told.

(Ra11 at pp. 10-11).

Next, the Appellate Division discussed Demby's application
to act as co-counsel to his attorney, not to proceed pro se.
That application was addressed at the September 19, 2005 hearing,
but the appellate court noted that it appeared that the same
application had been discussed at another hearing between June 5
and September 15, although a transcript was not provided.  In the
September 19th transcript, it appears that Demby previously had
been instructed to file a request to proceed pro se and not to
act as co-counsel.  However, Demby still filed an application to
act as co-counsel.  When asked to explain his legal authority for
his request, Demby replied that the Camden County Jail law
library had standardized forms to act as co-counsel.  (Ra11 at
pp.11-12).

Further, the Appellate Division discussed Demby's inability
to understand the law and the propriety of his requests to have
the gun suppressed and to present an alibi defense.

> ...  In the September 19 transcript, defendant also makes
> reference to the "last time" he was in court and the
> "suppression of the gun."  We have no transcript of that
> proceeding.  The defendant goes on to say:
>
>> The last time I was in court a while ago I was talking
>> to you about the suppression of the gun and you had
>> explained that considering the fact that there is no
>> gun in this case that I don't have grounds or standing
>> to suppress considering the fact that there is none.
>> And, since you -- you know, you stated that I was

20

wondering if it was possible you can submit an order
form.
....
Well, if there's nothing to suppress then I shouldn't
be charged with one.
....
Well, I just felt as though that considering the fact
that there is no gun then I shouldn't be charged with
one, but yet you won't allow me to suppress the gun
when due process gives me that right.

Defendant's pursuit of his alibi defense further
demonstrates his confusion.  Defendant, on his own, filed an
alibi notice naming his sister, Theresa Demby, as an alibi
witness.  The record does not indicate for which incident
defendant intended to have her testify.  The use of
defendant's sister as an alibi witness appears to have been
an ongoing conflict between counsel and defendant.  Because
defendant's sister had told him she would not testify,
counsel refused to raise the defense during trial.
Defendant complained that his attorney had "abandoned" the
alibi line of defense he wished to pursue.  At sentencing,
the following exchange took place:

[Defendant] Sir, the reason why I feel as that I'm
entitled to a new trial because the Sixth Amendment of
the United States Constitution states that, it gives me
the right to make a defense as I know it, regardless of
whether or not if he spoke to my sister and she stated
that she would not testify, I think that's irrelevant
to the matter of asserting my line of defense.

[The court:] Well, sir, how are you going to rely upon
an alibi that you were somewhere else and you say your
sister was the person who was going to back you up when
your sister comes into the courtroom and says she ain't
testifying?
[Defendant:] Well, regardless of whether or not she was
going, she was to testify, still had a right to have my
defense implemented regardless if any of my witnesses
showed up.

[The court:] But, sir, what kind of credibility do you
have with a jury if you're saying - -

[Defendant:] That would be for the jury to decide.

It would have been improper for counsel to have pursued an
alibi defense he knew he could not establish because the

21

prospective witness refused to testify.  It would have been similarly improper for defendant to have pursued it, another principle he seemed incapable of understanding.

Some of defendant's legal filings were made for reasons even defendant could not explain.  For example, on May 5, 2006, immediately prior to the sentencing hearing, the judge asked defendant preliminarily if he wished to be heard on his motion for the judge to recuse himself.  Defendant responded by saying, "Sir, on January 39[], not - - excuse me - - what's that - - March 28[], I think it was that you heard my motion for recusal of which you denied."  The court reminded defendant that it never ruled on the motion for recusal, at which point defendant said he would withdraw it and just pursue his motion for a new trial.

(Ra11 at pp. 12-14).

The Appellate Division continued to discuss other incidents that supported the trial court's ruling that Demby did not have the ability to make a knowing, intelligent and voluntary waiver of his right to counsel:

(v)

Defendant's demeanor during all court proceedings seems somewhat confused.  This confusion is most clearly exhibited when defendant explained during the November 9 proceeding that he was seeking to represent himself because, "if the defendant is waiving his constitutional right to the assistance of counsel, then the [S]tate cannot impose an extended term." ...

(vi)

Defendant's first point in his pro se brief is that merely showing a handgun during a robbery is legally insufficient for a first-degree conviction.  That is simply incorrect, as the offense requires only that a person be "armed with" a deadly weapon while in the course of committing a theft. N.J.S.A 2C:15-1(b).

Defendant's second point in his pro se brief is that there was insufficient evidence for him to have been convicted of first-degree robbery, unlawful possession of a weapon, and possession of a weapon for unlawful purpose.  In support of that proposition he says only that "[i]n light of the mitigating evidence presented, the [j]ury [c]ould not have

found defendant [g]uilty of these counts beyond a reasonable doubt." After reviewing the record and applicable law, we find insufficient merit in defendant's pro se arguments to warrant extended discussion in a written opinion. R. 2:11-3(e)(2).

(vii)

In the final analysis, even if the trial judge did not engage defendant in a thoroughly open-ended exchange, he reached the correct conclusion for the correct reason. The ultimate focus must be defendant's actual understanding of the meaning of the waiver of his right to counsel. His rambling, repetitive, and confused statements establish his limited ability to comprehend legal process and its attendant risks. Reddish, supra, 181 N.J. at 595. We agree that defendant simply did not have the ability to make a knowing, intelligent, and voluntary waiver of his right to counsel.

Defendant wanted to waive his right to counsel, among other reasons, because of his erroneous belief that self-representation would shield him from an extended term sentence. He wanted to pursue an arguably fraudulent alibi defense. When these circumstances are added to his inability to clearly remember, or to accept principles of law and outcomes which were not to his liking, it is clear defendant could not make a knowing or intelligent waiver.

(Ra11 at pp. 15-17).

As noted above, the appellate court applied the standards set forth in Reddish and Crisafi, which plainly adhere to the federal standards enunciated by the Supreme Court in Faretta. The court then determined that the trial judge conducted a thorough and searching inquiry consistent with the controlling federal precedent in Faretta, and that based on the record, and on Demby's responses and obvious confusion and lack of understanding of the law as repeatedly explained to him, the trial court's ruling that Demby was incapable of effectuating a

knowing, intelligent and voluntary waiver of his right to counsel knowingly and intelligently was not in error.

This Court's review of the pertinent transcripts of the proceedings provided is consistent with the findings of the state court as set forth above.  Careful review of the proceedings reveal that the trial court did conduct an appropriate <u>Faretta</u> colloquy, and that even where the trial court's inquiry may have at times resembled a "mini-bar exam," Demby's responses and demeanor plainly demonstrated that he lacked the capacity to make a knowing, intelligent and voluntary waiver of his right to counsel.  Moreover, while Demby may have been explicit in declaring his desire to represent himself, the trial court's ruling in denying the request was not improperly based on Demby's lack of technical knowledge of the law or that such request would have been ill-advised.  <u>See</u> <u>Alongi</u>, 367 Fed. Appx. at 348. Rather, the trial court's determination that Demby was incapable of making such a knowing and intelligent decision was properly based on the totality of the circumstances regarding Demby's conduct and confusion during the proceedings that demonstrated his inability to make a competent waiver with his "eyes open" as contemplated by <u>Faretta</u>.  <u>See</u> <u>Alongi</u>, <u>supra</u>.

This Court further notes that, in <u>Alongi</u>, the trial court's colloquy focused solely on whether Alongi would be a skillful advocate contrary to the <u>Faretta</u> standard, whereas in this case, the trial court's colloquy concentrated on Demby's confusing and

repetitive conduct during pretrial motion practice that strongly suggested Demby's inability to make a knowing, intelligent and voluntary waiver of his right to counsel.  In contrast to <u>Alongi</u>, the trail court did not focus on Demby's legal knowledge, observing that Demby did, in fact, have a familiarity with the legal process, albeit, a superficial knowledge.  Rather, both the state appellate court and trial court stressed Demby's inability to fully understand and comprehend the meaning of his right to counsel, and the right to waive same, pointing to Demby's repeated applications to act as co-counsel, and not solely as his own counsel, which clearly belied a knowing and intelligent waiver of his right to counsel.

Therefore, there is no indication that the state courts unreasonably applied established federal law in reaching its decision, or that the state court decision was based on an unreasonable application of the facts in light of the evidence presented at trial.  Demby has not demonstrated that the state court opinion, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. <u>Matteo</u>, 171 F.3d at 891.  Accordingly, Demby's request for habeas relief is denied.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability

only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

**CONCLUSION**

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue. An appropriate Order follows.

 s/ Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

DATED: April 29, 2013

At Camden, New Jersey

26